United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLWESTER SLOWJEWSKI, | No. C-09-3011 JCS |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| POLAM FEDERAL CREDIT UNION, | |
| Defendant. | **[Docket Nos. 35, 45]** |

I.       INTRODUCTION

        Before the Court is a motion for summary judgment filed by Defendant Polam Federal Credit Union ("Defendant") and a cross motion for summary judgment filed by Plaintiff Sylwester Slojewski ("Plaintiff").[1]  The parties have consented to the jurisdiction of this Court.  A hearing was held on September 24, 2010.  At the hearing, the Court provided both parties with the opportunity to submit further briefing addressing four issues:  1) the materiality of the alleged TILA violations in this case; 2) whether the foreclosure sale in this case cut off the right of rescission; 3) whether Plaintiff has the ability to tender the loan amount, supported by declarations sufficient to overcome summary judgment on that issue and 4) the availability of the damages remedy.

        [1]  Defendant has filed a Request for Judicial Notice ("RJN") which is unopposed.  The request is GRANTED IN PART.  Because two the matters contained in Defendant's RJN are public records, and because the request is unopposed, the Court GRANTS Defendant's request to take judicial notice of the following two documents: 1) the Credit Union's Complaint for Unlawful Detainer (Exhibit A) and 2) Full Reconveyance of Plaintiff's prior loan from William and Trudy Drypolcher (Exhibit D).  The other documents attached to Defendant's RJN as Exhibits B and C are pleadings that were filed in this case (the parties' Joint Case Management Statement and the Plaintiff's Complaint in this matter) and are thus part of the record.  Judicial notice of the complaint and case management conference statement is unnecessary.

**United States District Court**
For the Northern District of California

Having considered the arguments of counsel at the hearing, the supplemental briefing submitted by the parties, and further evidence submitted by Plaintiff, the Defendant's motion for summary judgment is GRANTED.  Plaintiff's cross-motion is DENIED.

## II.    BACKGROUND

### A.    Facts

#### 1.    The Parties and Loan at Issue

In 2007, Plaintiff Sylwester Slojewski sought to refinance the mortgage on his residence, located att 223 Monterey Street, San Francisco, California.  Joint Statement of Undisputed Facts ("JSUF"), 1.  Polam Federal Credit Union ("Defendant") agreed to finance the mortgage in the amount of $720,000.00 with an initial interest rate of 7.5%.  JSUF 2; Adjustable Rate Note, attached as Exhibit B to the Declaration of Mark Chrzanowski (hereafter "Chrzanowski Decl.") at ¶ 7.

On September 12, 2007, the Defendant provided Plaintiff with Truth-In-Lending Disclosures in connection with the refinance, including statements detailing an annual percentage rate ("APR") of 7.506% and a total finance charge of $1,095,482.56, consisting of $1,093,411.33 in interest and $2,071.23 in prepaid/odd days' interest.  JSUF 9; Truth-In-Lending Disclosures, Chrzanowski Decl., ¶ 9, Exh. D.  Plaintiff signed that document, acknowledging that he had received a copy.  *Id.*

Also on September 12, 2007 the parties entered into a loan agreement by executing an Adjustable Rate Note whereby he promised to repay the loan amount of $720,000 over 30 years at an initial interest rate of 7.5%.  JSUF 3.  *See* Adjustable Rate Note, Chrzanowski Decl. ¶ 7, Exh. B.  The indebtedness evidenced by the Adjustable Rate Note for the mortgage was secured by a Deed of Trust executed on September 12, 2007 and recorded on September 20, 2007, in San Francisco County (San Francisco Assessor-Recorder's Instrument No. DOC-2007-I454628-00) and which encumbered the Property.  JSUF 4.  There was no mortgage broker fee associated with the transaction.  JSUF 12; Chrzanowski Decl., ¶ 23.

The actual annual percentage rate on the subject loan was 7.506%.  JSUF 9; Declaration of Dion Hansen ("Hansen Decl.") at ¶ 2-3, ¶¶ 5-6.  The interest to be paid over the life of the loan

totaled $1,093,411.33.  JSUF 9; Truth-In-Lending Disclosures, Chrzanowski Decl., ¶ 9, Exh. D.  The actual charges incurred by Plaintiff in connection with the subject loan are set forth in Cornerstone Title Company's Borrower's Final Settlement Statement.  JSUF 11.  The Borrower's Final Settlement Statement prepared by Cornerstone Title Company listed the following amounts paid in connection with the subject loan transaction:

```
(Prepaid) Odd Days' Interest ...............................................$1,627.45;
Credit Report ..................................................................... $25.00;
Document Preparation Fee: ............................................... $395.00;
Flood Certification Fee ....................................................... $18.00;
FedEx/Wire Fee ................................................................ $45.00;
Notary Fee ......................................................................... $20.00;
EagleOne Rate .............................................................. $1,550.00;
Record Trust Deed ............................................................. $65.00;
Record Release/Reconveyance........................................... $25.00;
Record Satisfaction Judgment/Lien .................................... $25.00;
Payoff of World Savings Bank Loan ......................... $600,622.34;
Payoff of William & Trudy Drypolcher Laon............. $102,925.00:
Satisfaction of Franchise Tax Board Lien (with interest) $8,062.72;
Satisfaction of San Francisco PUC Lien ........................... $506.44.
```

JSUF 20; Cornerstone Title Company's Final Statement, attached as Exhibit C to the Declaration of Samantha Gatton ("Gatton Decl."), ¶ 4; Cornerstone Title Company's Borrower's Final Settlement Statement, Gatton Decl., ¶ 5, Exh. D.

The Defendant obtained a credit report from Kroll Factual Data at a cost of $23.51.  JSUF 21; Kroll Factual Data's Statement/Invoice to the Credit Union dated September 30, 2007, Chrzanowski Decl., ¶ 14, Exh. H; Credit Union's October 15, 2007 check to Kroll Factual Data, Chrzanowski Decl., ¶ 15, Exh. I; Chrzanowski Decl., ¶ 16.

The Defendant paid $17.93 to FedEx in connection with the loan.  JSUF 26.  The parties agree that $17.93 to send a package by FedEx is reasonable, in that it is an amount within the range typically charged for such mail.  JSUF 27.  The Defendant also paid $25 for a wire transfer in connection with the loan, which is also considered reasonable as an amount typically charged for a wire transfer.  JSUF 28-29.  The parties dispute, however, whether these services and expenses were

3

**United States District Court**

For the Northern District of California

1    required by the Defendant and whether they were disclosed to Plaintiff before Defendant incurred

2    them.

3           Cornerstone Title Company notarized two documents in connection with the loan at issue,

4    the Deed of Trust and the Grant Deed for a total fee of $20.00.  JSUF 30.

5           In addition, the $395 document preparation fee is the same rate the Defendant charges in

6    connection with all of its loans.  JSUF 22; Chrzanowski Decl., ¶ 39.  The Defendant paid $11.00 for

7    a flood certification from LandAmerica.  JSUF 24; LandAmerica's Billing Report to the Credit

8    Union dated September 7, 2007, Chrzanowski Decl., ¶ 11, Exh. F; Credit Union's September 21,

9    2007 check to LandAmerica, Chrzanowski Decl., ¶ 12, Exh. G.  The parties agree that $11 for the

10   flood certification is reasonable, in that the amount is within the range typically charged for flood

11   certification services.  JSUF 25.

12          As will be discussed in greater detail below, Defendant contends that each of these fees is

13   "reasonable," in that they are within the range of such fees typically charged by financial institutions

14   for the described services.  Chrzanowski Decl., ¶¶ 13, 17, 20, 22, and 39.

15          Additionally, the $1,550 "EagleOne Rate" is a fee charged by Cornerstone Title Company

16   and is the sum of a $1,100 fee for title insurance and a $450 escrow fee.  JSUF 31; Gatton Decl., ¶ 8;

17   Cornerstone Title Company's January 14, 2010 letter to Mark Chrzanowski, Chrzanowski Decl., ¶

18   35, Exh. W.  These rates were filed with the Insurance Commissioner at least 30 days prior to the

19   consummation of the loan.  JSUF 33; Gatton Decl., ¶¶ 9 & 10.  Cornerstone and First American Title

20   Company issued a title insurance policy in connection with the subject loan transaction.  JSUF 32;

21   Gatton Decl., ¶ 11.[2]

22   _____

23          [2]According to the Defendant, the Credit Union does not require the use of escrow services or an
     escrow fee, nor does it require the use of FedEx or wire services, and this is communicated to each of
24   its borrowers. Chrzanowski Decl., ¶ 24; Gatton Decl., ¶¶ 2-3, Exh. A, (Loan Escrow Instructions), Exh.
     B (Escrow General Provisions).  Plaintiff disputes this fact, and asserts in his declaration that no one
25   explained to him that he had the option of not using an escrow.  Slojewski Decl., ¶ 5.  He further states
     that "Polam required the use of an escrow and chose Cornerstone Title." *Id.*  The Defendant argues that
26   this declaration contradicts deposition testimony provided ten days before the submission of the
     declaration and that this declaration is therefore a "sham declaration" designed to create a genuine issue
27   of material fact for trial.

28                                                          4

**United States District Court**
For the Northern District of California

Cornerstone notarized two documents – the Deed of Trust and Grant Deed – in connection with the loan, for a total fee of $20. Declaration of Samantha Gatton Decl., ¶ 6; Deed of Trust, Chrzanowski Decl, ¶ 8, Exh. C; Grant Deed, Gatton Decl., ¶ 6, Exh. E.

Additionally, Cornerstone (or one of its related entities, First American Title Company and Financial Title Company) recorded the Deed of Trust, Grant Deed and a Full Reconveyance of the Plaintiff's prior loan from William and Trudy Drypolcher for a total sum of $96 (Deed of Trust, $75, Grant Deed $12, Reconveyance of the Drypolcher Loan, $9). JSUF 34; Deed of Trust, Chrzanowski Decl., ¶ 8, Exh. C; Grant Deed, Gatton Decl., ¶ 6, Exh. E; Full Reconveyance, attached as Exhibit D to the Request for Judicial Notice.

Also on September 12, 2007, Defendant provided Plaintiff with a Notice of Right of Rescission of the mortgage transaction, as required by 28 U.S.C. § 1635(a) and 12 C.F.R. §226.23(b)(1). JSUF 8; Notice of Right to Rescission, Chrzanowski Decl., ¶ 10, Exh. E. Plaintiff signed that document, acknowledging that he had received it. *Id.* Plaintiff did not exercise his right to rescind the transaction by midnight on September 15, 2007. JSUF 11; Notice of Right to Rescission, Chrzanowski Decl., ¶ 10, Exh. E.

**4.    The Plaintiff's Default on Mortgage and Trustee's Sale and the Credit Union's Unlawful Detainer Action**

After refinancing the loan, Plaintiff made payments for nine months to the Defendant, and after July 2008, ceased making the required payments. JSUF 13; Quarterly Statements for the subject loan for July 1, 2007 through June 30, 2009, Chrzanowski Decl., ¶¶ 25-32, Exhs. M through T. After providing Plaintiff with notices of default, the Defendant instituted non-judicial foreclosure proceedings on the property, noticing the Trustee's Sale for April 22, 2009. JSUF 14; Trustee's Deed Upon Sale, Chrzanowski Decl. ¶ 34, Exh. V.

Prior to the trustee's sale, on April 20, 2009, Plaintiff sent a letter informing Defendant that Plaintiff was rescinding the mortgage loan. JSUF 5; April 20, 2009 Peter Hadiaris letter to the Credit Union, Chrzanowski Decl. ¶ 33, Exh. U. Defendant acknowledges that "[The] letter

5

1    referenced violations of at least five (5) statutes [including TILA]" but argues that in the Plaintiff's

2    attempt to rescind the transaction, Plaintiff's counsel "lumped all five acts together and stated that

3    his client was rescinding."  Def.'s Motion at 11-12; Peter Hadiaris letter to Mark Chrzanowski dated

4    April 20, 2009, Chrzanowski Decl. ¶ 33, Exh. U.

5            The Defendant purchased the property at the non-judicial foreclosure sale that took place on

6    April 22, 2009.  JSUF 17; Trustee's Deed Upon Sale, Chrzanowski Decl., ¶ 34,  Exh. V.  Thereafter,

7    the Defendant recorded its Trustee's Deed Upon Sale on April 30, 2009 as Instrument No.

8    2009-I755051 in the Office of the San Francisco County Recorder.  JSUF 17; Trustee's Deed Upon

9    Sale, Chrzanowski Decl., ¶ 34, Exh. V.

10           After giving Plaintiff notice to vacate the property, the Defendant initiated legal proceedings

11   to remove Plaintiff from the property.  The Defendant filed an action for unlawful detainer with the

12   Superior Court of San Francisco.  *See* Credit Union's Complaint for Unlawful Detainer, attached as

13   Exhibit A to the Request for Judicial Notice.  That action is currently pending.

14           **B.       Procedural History**

15           Plaintiff filed the current federal court action on July 6, 2009.  In his Complaint, Plaintiff

16   states a single cause of action for Quiet Title.  Compl., ¶¶ 5-16.  The claim for Quiet Title is based

17   on two alleged violations of TILA, as well as a purported "wrongful foreclosure" following

18   Plaintiff's April 20, 2009 attempt to rescind the loan. Compl., ¶¶ 3 & 12.

19           The first claimed TILA violation is that the disclosed finance charge was understated by

20   more than $35.00.  Compl., ¶ 12(a).  This claim is based on the sections of TILA and Regulation Z

21   (12 C.F.R. § 226, *et seq*.) that address the required tolerances for disclosures in the foreclosure

22   setting.  15 U.S.C. § 1635(i)(2) (2009); 12 C.F.R. § 226.23(h)(2) (2009).  The second asserted TILA

23   violation is that the disclosed annual percentage rate (APR) was understated by more than

24   one-eighth of one percent.  Compl., ¶ 12(b).  This claim is based in the sections of TILA and

25   Regulation Z that speak to the tolerances for disclosure of annual percentage rates. 15 U.S.C. §

26

27

28                                                    6

1606(c) (2009); 12 C.F.R. § 226.22(a)(2) (2009).  Plaintiff concedes in his opposition to the summary judgment motion that the APR was within the appropriate tolerance.

Finally, Plaintiff claims that the Defendant's purchase of the property at the April 22, 2009 foreclosure sale was wrongful due to Plaintiff's rescission of the Deed of Trust two days before the sale.  Compl., ¶¶ 13 & 14.  Plaintiff's rescission was based on provisions of TILA and Regulation Z that allow for a borrower to rescind a loan transaction once the property goes into foreclosure.  Compl., ¶ 13; Joint Case Management Statement at p. 3:4-6.

Thus, Plaintiff's sole cause of action for Quiet Title is based on two alleged TILA violations: and understatement of the finance charge, as well as an allegedly wrongful purchase of the property at the foreclosure sale after the rescission.

## II.    DISCUSSION

### A.    The Parties' Motions

#### 1.    The Defendant's Motion

The Defendant has filed the present motion for summary judgment on the grounds that there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law with respect to Plaintiff's sole cause of action for Quiet Title.  The Motion is based upon the following grounds:  (1) Plaintiff's rescission claim is barred by the statute of limitations; (2) Plaintiff's April 20, 2009 attempt to rescind the Deed of Trust was invalid; (3) Plaintiff's claims for damages under the Truth-In-Lending Act ("TILA") are barred by the statute of limitations; (4) The annual percentage rate stated in the Credit Union's TILA disclosures for the subject loan is within the allowed tolerance and therefore not in violation of TILA; (5) The finance charge stated in the Credit Union's TILA disclosures for the subject loan is within the allowed tolerance and therefore not in violation of TILA; (6) Even if the Credit Union's disclosures did violate TILA, the Credit Union relied in good faith on loan software provided by Wolters Kluwer Financial Services; and (7) Plaintiff's cause of action for Quiet Title necessarily fails because his claim of title rests entirely on the validity of his claim of rescission and violations of the Truth-In-Lending Act.  The Defendant's

**United States District Court**
For the Northern District of California

1  motion is based upon Fed. R. Civ. P. 56, the Truth-In Lending Act (15 U.S.C. § 1605, *et seq.*),

2  Regulation Z (12 C.F.R. 226, *et. seq.*), the Declarations of Mark Chrzanowski ("Chrzanowski

3  Decl"), Samantha Gatton ("Gatton Decl."), Dion Hansen ("Hansen Decl."), and Jason B. Shane

4  ("Shane Decl."), and the Defendant's Request for Judicial Notice ("RJN").

5      In opposition, Plaintiff argues first that his claim for rescission is not barred by the statute of

6  limitations because the notice to rescind was proper and timely.  Second, Plaintiff argues that there

7  are material facts in dispute that preclude the Court from granting summary judgment on the

8  question of whether Plaintiff has a right to rescind under 15 U.S.C. § 1635(a).  Third, Plaintiff

9  argues that his claim for statutory damages is not barred by the statute of limitations because the

10  Defendant's failure to honor Plaintiff's rescission is a separate violation of TILA and entitles

11  Plaintiff to pursue damages for that violation.[3]  With respect to the alleged TILA violations based

12  upon the APR and finance charges, Plaintiff concedes that the APR was within the allowable

13  tolerances, yet disputes the Defendant's contention that the finance charge was within the statutory

14  tolerance of $35.00.  Pl.'s Opp. at 6-7.  Finally, Plaintiff argues that Defendant is not entitled as a

15  matter of law, to the "bona fide error defense" because the Defendant has not met its burden of

16  demonstrating that its errors in calculating the finance charge were the result of defective computer

17  software.  Pl.'s Opp. at 13.

18          **2.      The Plaintiff's Cross Motion**

19      The Plaintiff has filed a "Cross Motion for Partial Summary Judgment" seeking a

20  determination from this Court that: 1) Plaintiff's claim for rescission is not barred by the statute of

21  limitations; 2) Plaintiff's claim for damages for failure to honor plaintiff's notice of rescission is not

22  barred by the statute of limitations; and 3) Plaintiff's claim that defendant incorrectly disclosed the

23  finance charge is not subject to the "bona fide error defense."

24

25  _____

26      [3]Plaintiff concedes that his damages claim is barred to the extent it is based upon the initial
27  failures to disclose.  He bases his claim for damages on a separate claim – the Defendant's failure to
   honor the attempted rescission by proceeding with the foreclosure sale.  Pl.'s Opp. at 5.

28                                            8

**United States District Court**
For the Northern District of California

1    Defendant opposes the Plaintiff's motion, first, on the ground that the motion is procedurally

2 deficient in that it is not accompanied by a memorandum of points and authorities and also because

3 Plaintiff made no good faith attempt to file a joint statement of undisputed facts, as required by this

4 Court.[4]

5    With respect to the merits, Defendant argues that:  1)  Plaintiff had no right of rescission and

6 therefore is not entitled to judgment as a matter of law on the issue of the statute of limitations for

7 his claim for damages based upon the rescission; 2) Plaintiff is not entitled to judgment on his claim

8 for damages based upon the failure to honor Plaintiff's attempted rescission (a separate TILA

9 violation) because such a claim has not yet accrued; and 3) a triable issue of fact exists as to whether

10 the Defendant is entitled to the bona fide error defense.

11    **B**.      **Motion for Summary Judgment – Legal Standard**

12    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

13 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

14 any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P.

15 56(c).  In order to prevail, a party moving for summary judgment must show the absence of a

16 genuine issue of material fact with respect to an essential element of the non-moving party's claim,

17 or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex*

18 *Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Further, "*Celotex*

19 requires that for issues on which the movant would bear the burden of proof at trial, that party must

20 show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential

21 elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for

22 the non-moving party."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).  Once the

23 movant has made this showing, the burden then shifts to the party opposing summary judgment to

24 designate "specific facts showing there is a genuine issue for trial." *Id.* at 323.  On summary

25

26
27    [4]In response to this Court's order, the parties have submitted a Joint Statement of Undisputed Facts ("JSUF").

28          9

1  judgment, the court draws all reasonable factual inferences in favor of the non-movant.  *Anderson v.*

2  *Liberty Lobby Inc*., 411 U.S. 242, 255 (1986).

3      **C.      The Plaintiff's Claim: TILA**

4      Plaintiff claims in the Complaint that Defendant violated TILA's finance charge and annual

5  percentage rate ("APR") disclosure requirements.  Specifically, he alleges that the disclosed finance

6  charge was understated by more than $35 in violation of Regulation Z and TILA, and that the APR

7  was understated by more than an eighth of a percent.  Compl., ¶ 12.  Plaintiff concedes in opposition

8  to the summary judgment motion that the APR was not understated, and further, that his claim for

9  damages based upon these alleged violations of TILA is barred by the statute of limitations.  Pl.'s

10 Opp. at 6.  He therefore bases his claim for damages upon the allegation that the Defendant violated

11 TILA by failing to honor his attempted rescission of the loan, which was based upon the alleged

12 TILA violation involving an understatement of the finance charge.  Compl., ¶¶ 14-16.

13     As will be explained further below, the Court GRANTS summary judgment in this case on

14 the grounds that: 1) Defendant did not underestimate the finance charge; 2) assuming nonetheless

15 that Defendant understated the amount of the finance charge, Plaintiff is not entitled to rescission;

16 and 3)  Plaintiff's claim for damages based solely on Defendant's alleged failure to honor the April

17 20, 2009 rescission attempt has not yet accrued.  Defendant's Motion for Summary judgment is

18 therefore GRANTED.

19         **1.      TILA and Regulation Z**

20      The TILA is a consumer protection statute that aims to "avoid the uninformed use of credit."

21 15 U.S.C. §1601(a).  TILA "has the broad purpose of promoting 'the informed use of credit' by

22 assuring 'meaningful disclosure of credit terms' to consumers."  *Ford Motor Credit Co. v. Milhollin*,

23 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (quoting 15 U.S.C. § 1601).  The statute

24 "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with

25 things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Beach v.*

26 *Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998).  The statute is

27

28                                      10

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   remedial in nature, and is therefore to be construed broadly in favor of the consumer. *Jackson v.*

2   *Grant*, 890 F.2d 118, 120 (9th Cir. 1989). Even "technical or minor violations" of TILA (or its

3   regulations) may give rise to liability on the part of the creditor. *Valdez v. America's Wholesale*

4   *Lender*, 2009 WL 5114305 *2 (Dec. 18, 2009, N.D. Cal) (citations omitted).

5   TILA focuses not only upon the form of a disclosure, but also its accuracy. *Id.* at *3 (the

6   adequacy of TILA disclosures is to be assessed "from the standpoint of an ordinary consumer, not

7   the perspective of a Federal Reserve Board Member, a federal judge, or an English professor.")

8   (*citing Smith v. Cash Store Mgmt.*, 195 F.3d 325, 327-28 (7th Cir. 1999) (internal quotations

9   omitted).

10   Congress delegated the task of "elaborat[ing] and expand[ing] the legal framework

11   governing commerce in credit" to the Federal Reserve Board, which "executed its responsibility by

12   promulgating Regulation Z," codified at 12 C.F.R. Part 226. *Ford Motor*, 444 U.S. at 560. A loan

13   disclosure violation under TILA triggers two potential remedies for a borrower: damages, 15 U.S.C.

14   § 1640, and rescission, 15 U.S.C. § 1635.

15   **2.      The Defendant Did Not Understate the Finance Charge**

16   In the present case, Plaintiff claims that the disclosures failed to meet the accuracy

17   requirements set by Regulation Z and that on this basis, he was entitled to rescind. The Court

18   disagrees.

19   Under TILA and Regulation Z, a disclosed finance charge may be understated within a

20   certain tolerance. TILA defines the types of fees and charges that must be included in the

21   computation of finance charges. The term "finance charge" is defined as "the sum of all charges,

22   payable directly or indirectly by the person to whom the credit is extended, and *imposed* directly or

23   indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §1605(a) (emphasis

24   supplied); *see also*, 12 C.F.R. § 226.4(a). When the extension of credit is secured by an interest in

25   real property, the "[f]ees or premiums for title examination, title insurance, or similar purposes," in

26   addition to other fees, are to be exempted from computation of the finance charge. 15 U.S.C. §

27

28                                                          11

1605(e)(1).  Regulation Z, the federal regulation that implements TILA, similarly provides that "fees for title examination, abstract of title, title insurance, property survey, and similar purposes" are not finance charges "if the fees are bona fide and reasonable." 12 C.F.R. § 226.4(c)(7)(i).

When analyzing whether a disclosed finance charge is within the applicable tolerance, the court looks to the final settlement statement in order to determine whether each amount listed should be included in the finance charge.  *See Guise v. BWM Mortg., LLC*, 377 F.3d 795, 797, 799 (7th Cir. 2004); *In re Sterten*, 546 F.3d 278, 281-82 (3d Cir. 2008).

The regulation requires the creditor to disclose the "finance charge, using that term, and a brief description such as 'the dollar amount the credit will cost you.'" 12 C.F.R. § 226.18(d).  In transactions "secured by real property or a dwelling," the disclosed finance charge "shall be treated as accurate" if the disclosed amount "is understated by no more than $100," or if it "is greater than the amount required to be disclosed."  *Id.*  Where a property is already in foreclosure – as was the case here – the tolerance is different.  The finance charge need not be perfectly accurate, but it can be understated by no more than $35.  15 U.S.C. § 1635(i)(2); 12 C.F.R. § 226.23(h)(2)(i).

In the present case, Plaintiff alleges that there were charges on the final settlement statement from Defendant that should be calculated as part of the undisclosed finance charge. Pl.'s Opp. at 7. Specifically, Plaintiff argues that the: 1) escrow fees of $450 and 2) the FedEx/wire fees of $45.00, should be considered part of the finance charge because Plaintiff was not given the choice regarding these fees before they were incurred by Defendant.  According to the Plaintiff, the "undisclosed finance charge is $87.71," an understatement of more than $35 that violates section 226.18(d)(1).[5] *See* Pl.'s Opp. at 8.  Plaintiff concedes that he "cannot prevail without winning on the issue of the

---

[5]Plaintiff concedes that certain charges were actually less than disclosed – the record/reconvey and Satisfaction of Judgment fees were disclosed at $28, but were in fact only $19.00, and the flood certification fees were less than disclosed.  Pl.'s Opp. at 7-8.

United States District Court

For the Northern District of California

escrow charge.  Without this large charge, there is no other combination of undisclosed charges that create an undisclosed finance charge."  Pl.'s Opp. at 8.[6]

Defendant argues that the escrow fee and FedEx charges were not "imposed," *i.e.*, required by the lender and, therefore, are properly excluded from the calculations.  Defendant argues that Plaintiff has improperly created a "triable issue of material fact" by submitting a "sham declaration" of Plaintiff, which contradicts his deposition testimony, given only ten days before the filing of the declaration.  Def.'s Reply at 3-4.  Without Plaintiff's declaration, Defendant argues that there is no triable issue of fact with regard to whether the escrow fees and the FedEx charges should have been included in the finance charge calculation.  Defendant presents its own calculation, adding up all of the items, deducting amounts where Plaintiff was undercharged (*e.g.*, a $10 deduction for recording the Deed of Trust), excluding the FedEx fee (on the ground that Plaintiff's declaration is a sham on this point) and then argues that, even including the $450 escrow fee as part of the undisclosed finance charge, the difference is only $32.71, which is within the allowable tolerance of $35.00.

The Court agrees with Defendant and concludes that the Plaintiff's declaration must be stricken in this case on the grounds that it is a "sham declaration."  The FedEx and wire fees are therefore not properly included as part of the finance charge.  Accordingly, there was no failure to disclosure, and no TILA violation.  The Court will address each fee in turn.

    *a.*    The FedEx Wire Fee:

In the TILA disclosure statement, the Defendant included the FedEx charge, but did not include the amount as part of the Finance charge.  Plaintiff contends that this charge should have been included as part of the finance charge calculation because it was an amount required by the Defendant.  *See Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir. 1004) (holding that the Federal Express fee at issue was a transaction charge, imposed by the lender as an incident to the extension of credit and should have been included in the Finance Charge); *but see Veale v. Citibank*,

---

[6]As Defendant points out in its reply, without the escrow fee, the Defendant actually overstated (not understated) the finance charge in its disclosure by $362.29. Where the finance charge is overstated, it is not a violation of TILA or Regulation Z.

United States District Court

For the Northern District of California

1   85 F.3d 577, 579 (11th Cir. 1996) (concluding, after trial, that the Federal Express fee was not

2   required by Citibank, thus not imposed as an incident to the extension of credit).

3          The Court is persuaded by Defendant's argument that the Plaintiff's declaration – the only

4   evidence that the FedEx/wire fee was "required" –  is a "sham declaration."  In order to find the

5   declaration and corrections to the deposition testimony to be "sham" testimony, the Court must be

6   satisfied that the subsequent testimony "flatly contradicts" the earlier deposition testimony and that

7   it was provided for the sole reason of creating a genuine issue of fact for trial.  *Kennedy v. Allied*

8   *Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citation omitted).  In *Kennedy*, the Ninth Circuit

9   explained that the sham declaration rule should be applied with caution, and that the rule does "not

10  does not automatically dispose of every case in which a contradictory affidavit is introduced to

11  explain portions of earlier deposition testimony.  Rather, [the rule is] concerned with 'sham'

12  testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid

13  summary judgment."  *Id.* at 267.  Before applying the harsh sanction of striking a declaration, the

14  district court must make a factual determination that the contradiction was actually a "sham."  *Id.*

15  The Ninth Circuit has provided guidance on the question of when a declaration that contradicts

16  earlier sworn testimony may not be found to be "a sham."  *Messick v. Horizon Industries Inc.*, 62

17  F.3d 1227, 1231 (9th Cir. 1995).  In *Messick*, the court explained that a declaration will not be

18  considered a sham when it is offered to elaborate, explain or clarify earlier deposition testimony in

19  the context of an honest discrepancy, mistake, or newly discovered evidence.  *Id.*  However, when

20  subsequent testimony flatly contradicts earlier sworn testimony, it will be found to have been

21  "sham" testimony.

22          Defendant argues that Plaintiff's statements regarding the escrow fee and his statements that

23  the Credit Union required FedEx and wire services directly contradict his deposition testimony and

24  should be "summarily disregarded."  Reply at 7.  Defendant argues that Plaintiff testified at his

25  deposition that he had no recollection of speaking with anyone at the Credit Union or at Cornerstone

26  Title Company regarding the necessity of FedEx or wire services, and that he had no reason to

27

28                                            14

1  believe that FedEx or wire serves were required in connection with the loan.  He has since submitted

2  a declaration in which he states that the Defendant did in fact require these services.  Slojewski

3  Decl., ¶ 6.

4      The exchange at the deposition was as follows:

5      Q.    Okay back up near the top for the FedEx wire fee again –

6      A.    Okay.

7      Q.    – it's $45. Do you see that, sir?  Do you see that?

8      A.    Yes, I see.

9      Q.    Do you recall the credit union ever addressing the necessity of this fee with you?

10      A.    No.

11      Q.    Do you recall the credit union ever discussing the necessity of using either FedEx

12              services or wire services in connection with this loan?

13      A.    No.

14      Q.    Okay.  Do you recall anyone at CornerStone discussing the necessity of FedEx or

15              wire services in connection with this loan?

16      A.    No.

17      Q.    *Do you have any reason to believe that FedEx services were required in connection*

18              *with this loan*?

19      A.    *No.*

20      Q.    *Do you have any reason to believe that wire services were required in connection*

21              *with this loan?*

22      A.    *No.*

23  Deposition of Sylwester Slojewski at p. 146:24-147:21, attached as Exhibit A to the Declaration of

24  Jason B. Shane (emphasis added).

25      Plaintiff responds that he has clarified this testimony subsequent to the deposition (*see* Errata

26  Sheet attached to Declaration of Peter Hadiaris, Docket No. 59-2) to state that he interpreted the

27

28                        15

1  defense lawyer's questions as asking him whether outside circumstances required Fed/Ex/wire

2  services to be used, and that defense counsel's questions at the deposition on this topic were

3  ambiguous.  *Id.*  Plaintiff also points out that he testified at his deposition that the FedEx and wire

4  charges were not discussed with him and that "this is certainly inconsistent with defense counsel's

5  claim that his testimony means that he was given a choice about having these services used."  Pl.'s

6  Suppl. Response at 2, Docket No. 59.

7          Here, the Plaintiff testified at his deposition that he had no reason to believe that FedEx or

8  wire services were required by the Credit Union.  Defendant's testimony is that the services were not

9  required.  Ten days later, Plaintiff submitted a declaration in opposition to the Defendant's motion

10  for summary judgment in which he states the opposite.  This is precisely the sort of "flat

11  contradiction" addressed by the Ninth Circuit in *Kennedy, supra*.  The Court is not persuaded by

12  Plaintiff's attempt to characterize this subsequent testimony as a clarification of the earlier

13  deposition testimony.  The declaration will not be considered by the Court.  There is, therefore, no

14  evidence that these charges were required in connection with the transaction.  The only evidence is

15  to the contrary.  Accordingly, they were not part of the finance charge.

16                  *b.      The Escrow Fee*

17          According to the Defendant, "[t]wo fees included in the final statements – the $45

18  FedEx/Wire fee and $450 escrow fee – are only included in the finance charge in discrete

19  circumstances."  Def.'s Motion at 20 (*citing Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996).

20  Defendant makes the same arguments raised in support of its contention that the FedEx wire fees

21  were properly excluded from the finance charge – that the only evidence creating a triable issue of

22  fact on this question consists of a "sham declaration" submitted by Plaintiff.  The Court agrees.

23          As with the FedEx/Wire fee discussion at the deposition, defense counsel asked questions in

24  the same form.  He asked Plaintiff whether he had any reason to believe that the escrow fee "was

25  required."  Plaintiff answered "no."  Nonetheless, Plaintiff states in his declaration that Polam

26  required the use of an escrow and chose Cornerstone Title.  Slojewski Decl., ¶ 5.  Accordingly, the

27

1  Court grants Defendant's request to strike the Plaintiff's declaration as a "sham declaration."

2  Therefore, the only evidence before the Court demonstrates that the escrow fee was not required,

3  and is not part of the finance charge.  Accordingly, the finance charge was not understated.

**3.       Rescission Under TILA**

5       Plaintiff seeks rescission, and seeks damages for failure to rescind.  The Court concludes

6  that, even assuming the finance charge disclosure exceeded the tolerance levels of Regulation Z,

7  Plaintiff is not entitled to rescission.  Plaintiff has not provided sufficient evidence for a trier of fact

8  to conclude that he has the ability to rescind.

9       Plaintiff has failed to produce admissible evidence that he has the ability to tender the loan

10  proceeds in this case.  As explained above, TILA affords borrowers the opportunity to rescind credit

11  transactions under certain circumstances.  *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23.  Rescission

12  returns the parties to the status quo ante.  *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172

13  (9th Cir. 2003).  "[R]escission under § 1635(b) is an on-going process consisting of a number of

14  steps."  *Id.* at 1173.  Although § 1635 sets forth specific procedures for rescission, courts have the

15  discretion to modify the procedures either before or after determining that rescission is warranted.

16  *Id.*  In *Yamamoto*, the Ninth Circuit explained the following:

17       ... there is no reason why a court that may alter the sequence of procedures after deciding that
         rescission is warranted, may not do so before deciding that rescission is warranted when it
18       finds that, assuming grounds for rescission exist, rescission still could not be enforced
         because the borrower cannot comply with the borrower's rescission obligations no matter
19       what. Such a decision lies within the court's equitable discretion, taking into consideration
         all the circumstances including the nature of the violations and the borrower's ability to
20       repay the proceeds. If ... it is clear from the evidence that the borrower lacks capacity to pay
         back what she has received (less interest, finance charges, etc.), the court does not lack
21       discretion to do before trial what it could do after.

22  *Id* at 1173.  Whether to require a Plaintiff to prove the ability to tender before deciding whether

23  rescission is warranted is a decision that must be made on a "case-by-case basis, in light of the

24  record adduced."  *Id.*   In *Yamamoto,* the district court gave the borrowers 60 days before dismissing

25  their rescission claim.  When the borrowers were not able to demonstrate the ability to tender, the

26  court granted summary judgment in favor of the lender, even though the court had found disputed

27

28                                              17

United States District Court

For the Northern District of California

issues of material fact on the question of whether the borrowers had received the proper TILA disclosures.  The Ninth Circuit affirmed.  *Id.* at 1173.   Although most cases involving the tender issue arise in the context of motions to dismiss, it is clear that ultimately, a plaintiff is not able to prevail – *i.e.*, will not be entitled to rescission – unless the plaintiff can tender the principal balance of the loan.  *Clemens v. J.P. Morgan Chase Nat. Corporate Services, Inc.*, 2009 WL 4507742 (EMC)  (N.D. Cal., Dec. 1, 2009).

Here, Plaintiff failed to allege ability to tender in his complaint.  The Court raised the issue at the hearing on the cross-motions for summary judgment, and provided Plaintiff with time to submit evidence and further briefing on the issue of his present ability to tender.

The Court has reviewed the evidence submitted by Plaintiff and the parties' briefs on the issue, and concludes that Plaintiff's rescission claim fails due to a present inability to tender the proceeds of the loan.  The evidence submitted by Plaintiff is conclusory, speculative, and consists, in part, of inadmissible hearsay.

Specifically, Plaintiff states that he has $50,000 to use as a down payment for a loan to repay the current loan.  Supplemental Declaration of Sylwester Slojewski at ¶ 3.  Despite being given the opportunity to do so, Plaintiff does not present evidence of an approval or pre-approval from any bank or lender, which could support his claim of an ability to tender the amount owed on the loan.  The amount he does present – $50,000 –  is insufficient to rescind a $640,000 loan.  Plaintiff states that he spoke with Wachter Investments and was told that they would lend him 50% of the value of the home.  Slojewski Decl., ¶ 5.  This statement is inadmissible hearsay.  Moreover, there is no evidence before the Court as to the current value of the home – and so no evidence of the amount of any such loan.  In addition, there are no specifics included in the Plaintiff's declaration, such as whether he has actually received preliminary approval for this alleged loan from Wachter Investments, and if so, what amount is being financed.  In short, Plaintiff's own statement that he believes Wachter Investments is going to help him is not the sort of specific, admissible evidence required at the summary judgment stage.  It is speculative at best.

18

United States District Court

For the Northern District of California

The other declarations submitted by Plaintiff fare no better.  He submits the declaration of his mother who states that she owns approximately $2 million in real estate in Poland.  She does not indicate whether, even using this property, she has the ability to obtain a loan, and in what amount.  Declaration of Barbara Slowjewski at ¶ 4.  She then states that she will lend Plaintiff whatever he needs, but also says that she will "provide [Plaintiff] with more of a down payment" if he finances less than 80% of the price. *Id.*  With this ambiguous statement on the amount to be loaned, and the total lack of any showing of the amount that could actually be borrowed against the property in Poland, the Court concludes that this showing is inadequate.

The declaration of Plaintiffs' niece, Karolina Ziemniewicz, is similarly insufficient.  Ms. Ziemniewicz states that she has excellent credit and a stable job where she earns $80,000 a year.  Declaration of Karolina Ziemniewicz at ¶ 2.  She also explains that her boyfriend earns $150,000 per year and that between the two of them, they "could easily qualify for the needed loan," yet provides no statement as to any specific dollar amount she or her boyfriend are willing to lend Plaintiff.  Nor does she present any indication that she or her boyfriend has applied for a loan, received pre-approval for a loan or has even discussed obtaining a loan from a lender.  While these declarations demonstrate good intentions, and might satisfy the liberal pleading standard at the motion to dismiss stage, they fall far short of constituting evidence sufficient to survive summary judgment.  Plaintiff has not put forth admissible evidence of an ability to tender the loan proceeds in this case.[7]  The

[7]The motion for summary judgment could be granted on another ground.  Plaintiff's complaint ultimately seeks to quiet title, yet Plaintiff fails to address the requirements of an action to quiet title.  "The purpose of a quiet title action is to establish one's title against adverse claims to real property.  A basic requirement of an action to quiet title is an allegations that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the Deed of Trust.'" *Santos v. Countrywide Home Loans*, 2009 WL 35633, at *4 (E.D. Cal. Nov. 6, 2009) (internal quotations and citations omitted).  "[A] mortgagor cannot quiet his title against the mortgage without paying the debt secured." *Watson v. MTS Financial, Inc.*, 2009 WL 215182, at *4 (E.D. Cal. Jul. 17, 2009).  As stated above with respect to the tender issue, in the present case, there is no allegation in the Complaint, nor has evidence been presented that:  1) Plaintiff has shown an ability to tender; or 2) that he has paid the debt secured by the mortgage.  Courts repeatedly hold that a plaintiff cannot prevail on summary judgment in an action to quiet title if he has not demonstrated an ability to tender or that the debt has been paid.  As one court explained "it was not the intent of Congress to reduce the mortgage company to an unsecured creditor." *Valdez v. America's Wholesale Lender*, 2009 WL 5114305 at *5 (N.D. Cal., Dec. 18, 2009) (quoting *Del Valle v. Mortg. Bank of California*, 2009 WL 3786061, at *8 (E.D.Cal.,

1    Court exercises its discretion under the Ninth Circuit authority, *Yamamoto, supra*, and concludes

2    that Plaintiff's present inability to tender precludes him from seeking rescission of the loan.

3                    **4.     Statute of Limitations**

4          Defendant argues that Plaintiff's claim for damages based upon any alleged TILA violation

5    is time-barred.  The Court agrees.  The claims for damages based upon the failure to accurately

6    disclose the finance charge are time-barred, as Plaintiff himself concedes.  Pl.'s Opp. at 5.  The

7    motion for summary judgment with respect to this issue is unopposed and therefore, GRANTED.

8                    **5.     Plaintiff's Claim for Damages to the Extent it is Based Solely Upon
                             Defendant's Alleged Failure to Honor the April 20, 2009 Rescission Has
9                            Not Yet Accrued**

10         Plaintiff's claim for damages is premised solely upon the Defendant's alleged failure to

11   honor his attempted rescission on April 20, 2009.  For the reasons stated previously, the Court has

12   found that Plaintiff has no right to rescind in this case.  Therefore, there can be no damages based

13   upon the alleged right to rescind.  Plaintiff's damages claim also fails because any claim for damages

14   based upon the April 20, 2009 "rescission" has not yet accrued.  On April 20, 2009, Plaintiff notified

15   Defendant of his election to rescind, this notice did not in and of itself, result in a rescission.

16   Unilateral notification of a rescission does not void a loan.  *See Yamamoto*, 329 F.3d at 1172 (". . .

17   the security interest only becomes void only when the consumer rescinds the transaction.  In a

18   contested case, this happens when the right to rescind is determined in the borrower's favor.").

19   Plaintiff's damages claim has not accrued and cannot form a separate basis on which to seek relief.

20

21

22

23

24

25   _____

26   Nov.10, 2009))and that "rescission is an empty remedy without [plaintiff's] ability to pay back what she
     has received."  *Valdez* at *5 (citing *Garcia v. Wachovia Mortg. Corp.*, 2009 WL 3837621 at *5
27   (C.D.Cal., Oct.14, 2009).

28                                      20

**United States District Court**

For the Northern District of California

1

**IV.     CONCLUSION**

2

        For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.  The

3

Plaintiff's cross-motion is DENIED.  The Clerk shall close the file.

4

IT IS SO ORDERED.

5

Dated: December 1, 2010

6

_____

7

JOSEPH C. SPERO
United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28